UNITED STATES of America, Plaintiff–Appellee,

v.

Geovanni Alfonso CASALLAS, Defendant–Appellant.

Nos. 91–6153, 91–6154 and 91–6155.

United States Court of Appeals, Eleventh Circuit.

July 31, 1995.

Lisa A. Rosenthal, Bergendahl & Rosenthal, Miami, FL, for appellant.

Kendall Coffey, U.S. Atty., Christopher J. Clark, Marc Fagelson, Linda Collins Hertz, Anne Ruth Schultz, Asst. U.S. Attys., Miami, FL, for appellee in No. 91–6153.

Dexter W. Lehtinen, U.S. Atty., Christopher J. Clark, Anne R. Schultz, Miami, FL, for appellee in Nos. 91–6154 and 91–6155.

Before KRAVITCH and EDMONDSON, Circuit Judges, and EISELE [1], Senior District Judge.

---

1. Honorable G. Thomas Eisele, Senior U.S. District Judge for the Eastern District of Arkansas, sitting by designation.

EISELE, Senior District Judge:

This case involves three separate consolidated appeals arising from three separate indictments. Alleging errors in the plea-taking process, appellant Geovanni Alfonso Casallas seeks to withdraw his guilty pleas to three separate drug counts, each count being charged in a separate indictment. We find reversible error only with respect to the district court judge's comments during the initial plea. Accordingly, Casallas will be allowed to withdraw his first guilty plea, but the remaining two convictions and sentences pursuant to his second and third guilty pleas will stand.

### I.

Two separate plea change hearings were held before the United States District Judge. Casallas initially pled guilty to one count in the "Texas indictment": conspiracy to possess with intent to distribute in excess of five kilograms of cocaine, in violation of 21 U.S.C. § 846.[2] The remaining two counts in that indictment were dismissed. Approximately one month later, Casallas pled guilty to two counts of conspiracy (one in each of the two separate Florida indictments) to import cocaine in quantities of 350 kilograms and 150 kilograms, respectively, in violation of 21 U.S.C. § 963. The government agreed to dismiss the remaining charges against Casal-

las in those two indictments (totalling six separate counts).

One sentencing hearing was scheduled for all three cases. At the sentencing hearing, Casallas made an oral motion to withdraw his guilty pleas and to substitute counsel.[3] The district court rejected both motions.[4] In imposing sentence on appellant, the court gave Casallas every benefit sought by defense counsel, which had the effect of reducing the sentencing range from the presentence calculation of life down to level 40, which carried a guideline range of 292 to 365 months. The court then sentenced Casallas to the minimum sentence within the range, 292 months imprisonment on each conviction. Further, the court ordered that the terms of imprisonment be served concurrently. The court also imposed concurrent five-year terms of supervised release, and levied a $150 assessment. So, assuming the district court properly overruled Casallas' motion to withdraw his guilty pleas, Casallas could not have received more lenient sentences.

Casallas raises various issues in this direct appeal, but only the challenges to the voluntariness of his guilty pleas will be addressed, the remaining issues being either without arguable merit or premature.[5]

Casallas claims that the trial judge violated Rule 11 of the Federal Rules of Criminal Procedure by participating in plea negotia-

2. The case originated in the Southern District of Texas, but was transferred to the Southern District of Florida for the plea and sentencing pursuant to Rule 20 of the Federal Rules of Criminal Procedure.

3. Nine days prior to the sentencing hearing, Casallas filed a written *pro se* motion to withdraw his guilty plea in all three cases. That motion was never formally ruled on. The issues raised by the written motion were identical to those raised orally at sentencing. In those motions, Casallas primarily argued the ineffectiveness of counsel issue, which we do not reach in this direct appeal. Among other things, Casallas argued that his attorney forced him to accept a guilty plea even though Casallas wished to go to trial on an entrapment defense, and that he was promised an offense level of 34 or 36 with corresponding guideline ranges of 151–188 months and 188–235 months.

4. After subsequent *pro se* motions for substitution of counsel and a motion by appellant's counsel to

withdraw in all three cases, a magistrate judge granted counsel's motion to withdraw and new counsel was appointed. Throughout this appeal, appellant has been represented by substituted counsel.

5. Regarding appellant's claim that the government promised him a base offense level of between 34 and 36, that same contention was specifically rejected by the district court. The district court's finding was not clearly erroneous. *See Raulerson v. United States,* 901 F.2d 1009, 1012 (11th Cir.1990).

Casallas raises various factual assertions to support his ineffective assistance of counsel claim. For example, Casallas filed a *pro se* reply brief in which he devotes almost twenty-two of the twenty-five total pages to the ineffective assistance of counsel issue. This claim, however, is premature and will not be considered at this stage of direct appeal. *See United States v. Teague,* 953 F.2d 1525, 1534 n. 11 (11th Cir.) (*en banc*), *cert. denied,* —— U.S. ——, 113 S.Ct. 127, 121 L.Ed.2d 82 (1992).

tions and by failing to advise Casallas of the existence of the sentencing guidelines. As described in greater detail below, although the trial court's error in not advising Casallas of the sentencing guidelines is harmless within the meaning of Rule 11(h), the trial court's participation in the plea negotiation process requires that Casallas' guilty plea to the Texas indictment be set aside. Because we find that the court's participation in the first guilty plea did not infect the subsequent guilty pleas to the Florida indictments, those subsequent pleas of guilty remain.

## II. PARTICIPATION IN PLEA NEGOTIATIONS

During the initial plea change hearing, Casallas appeared in the Southern District of Florida to plead guilty to the Texas indictment pursuant to Rule 20. The hearing began by Casallas' attorney announcing that Casallas had changed his mind and did not wish to plead guilty. Casallas argues that the district court judge then intimidated him into pleading guilty by the following remarks:

MR. FLORES: We were scheduled for a change of plea on a Rule 20 from Texas which was transferred here because Mr. Casallas has two other cases pending before your Honor.

THE COURT: All right.

MR. FLORES: As it turned out Mr. Casallas changed his mind and doesn't want to plead guilty. Therefore, I believe this case will be sent back to Texas.

THE COURT: Yes, it will be shipped back. The only purpose for bringing it in was to take the plea.

MR. FLORES: Except that he has two cases pending before your Honor which is set for trial.

THE COURT: When?

MR. FLORES: One is August and the other is October.

THE COURT: Ship him back. They have no room at the inn. Ship him back to Texas and bring him back here a few days before the trial. They have 1,380 people here so better off he goes back.

MR. FLORES: If I could explain the reason why.

THE COURT: It probably is more pertinent to that very soft hearted Judge that he is going to be before in Houston.

Defense counsel then volunteered that Casallas wanted to plead guilty but was concerned about the behavior of the confidential informant ("CI") in the case. The prosecutor interjected that the Texas case was totally unrelated to the other two cases pending, as it involved a stop of Casallas' car during which fourteen kilograms of cocaine were discovered. Additionally, Casallas was implicated in the illegal transfer of $100,000.[6] The prosecutor noted the possibility of consecutive sentences. Further, the prosecutor again noted that appellant's complaints about the CI were completely unrelated to the Texas case. At which point, the Court continued:

THE COURT: The difficulty and he should understand this, is that when he goes back out there he doesn't get the benefit of any bargains or promises. He just goes back for trial and they try it on three counts. If they got a gun count in there, he is looking on a minimum mandatory of five years.

So there he can get a minimum mandatory fifteen years. If he pleads this afternoon, he would get a minimum mandatory of ten, apparently which is a lot better than fifteen. I suggest to the Defendant that he talk to his lawyer some and see if that is really what he wants to do.

MR. FLORES: If I could have a moment.

THE COURT: Yes.

MR. FLORES: We are ready to plead. Mr. Cassallas then entered a guilty plea.

Appellant argues that during this exchange, the judge's remarks impermissibly coerced him into pleading guilty. Further, appellant claims that the district judge basically promised a ten-year sentence if he pled guilty. For these reasons, appellant claims that his plea was not knowingly and voluntarily made.

---

**6.** Casallas had agreed to plead guilty to the possession count in exchange for the dismissal of the money laundering count and the government's agreement not to pursue the gun charge.

■ We reject Casallas' argument that the district court promised him a ten-year sentence. In light of the entire record, the judge is clearly referring to the legal requirements of a minimum mandatory of ten years as opposed to a sentence of ten years. The district court judge followed up this statement, prior to accepting the plea, by specifically advising Casallas that the maximum sentence was life imprisonment and that there was a minimum mandatory sentence of ten years. Asked by the court if he understood the statutory mandatory and minimum sentences, Casallas stated that he understood. In the context of the entire record, we reject appellant's assertion that the district court promised him a ten-year sentence.[7]

■ Turning now to appellant's contention that the trial judge's remarks coerced him into changing his mind and deciding to enter a guilty plea, we find problematic the district court judge's statements just prior to Casallas' decision to plead. *See* quoted portion from transcript, *supra.* As Casallas stood before the district court ready to return to Texas for trial, the district court judge contrasted the fifteen-year minimum mandatory that Casallas faced by going to trial in Texas with the ten-year minimum mandatory that Casallas faced by pleading to the conspiracy count. The judge stated: "[i]f he pleads this afternoon he would get a minimum mandatory of ten, apparently which is a lot better than fifteen." The judge followed this statement with additional advice that Casallas "talk to his lawyer some and see if that is really what he wants to do." Although the record clearly reveals that these comments were innocuous and intended only to insure that Casallas was making an informed decision, our precedent on this issue requires reversal.

Rule 11(e) advises that attorneys for the government and defendant "may engage in plea discussions with a view toward reaching an agreement," but the rule concludes with a strict admonition that "the court shall not participate in any such discussions." Several courts have interpreted this provision as a bright-line rule, such that where a court is found to have participated in plea negotiations, the conviction pursuant to the resulting plea is without exception set aside. See *United States v. Bruce,* 976 F.2d 552 (9th Cir.1992); *United States v. Adams,* 634 F.2d 830 (5th Cir. Unit A Jan. 1981); *United States v. Werker,* 535 F.2d 198 (2nd Cir.), *cert. denied,* 429 U.S. 926, 97 S.Ct. 330, 50 L.Ed.2d 296 (1976). As the court noted in *Bruce,* "the unambiguous mandate of Rule 11 prohibits the participation of the judge in plea negotiations under any circumstances: it is a rule that, as we have noted, admits of no exceptions." *Bruce,* 976 F.2d at 558 (*citing United States v. Adams,* 634 F.2d at 839).[8]

This Circuit cited *Bruce* with approval in *United States v. Corbitt,* 996 F.2d 1132, 1133 (11th Cir.1993). In *Corbitt,* the Court vacated the defendant's guilty plea solely due to the district court's comments. Responding to defense counsel's request for additional plea negotiation time for his client, who had

---

7. Although further inquiry is unnecessary in light of our conclusion that the district court's language on its face did not constitute a promise, we note that this defendant was particularly sophisticated and could in no event have believed that he was being promised a ten-year sentence. In addition to drafting and filing numerous *pro se* motions, as well as the current reply brief, appellant has written letters to the Justice Department and his counsel, and lodged a formal complaint against his counsel with the Florida bar. These submissions, all of which are a part of the record before this Court, indicate that appellant is anything but the average criminal defendant. Rather, all indications are that this appellant has a firm grasp of the criminal legal process and more than sufficient ability to convey that knowledge in writing.

8. The Fifth Circuit retreated from the bright-line rule of *Adams* in *United States v. Miles,* 10 F.3d 1135, 1140 (5th Cir.1993), wherein it noted its obligation to apply a harmless error analysis. In applying and rejecting the government's argument that the judicial participation was harmless, the court in *Miles* noted that it could not find one instance in which a federal court found judicial participation in plea negotiations to be harmless error. *Id.* at 1141.

Of course, we are bound by *United States v. Adams,* 634 F.2d 830 (5th Cir. Unit A Jan. 1981), pursuant to *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), wherein decisions of the former Fifth Circuit rendered

appeared before the court to plead guilty, the court advised:

We don't play games in this court. Y'all want to plead guilty, you can plead guilty today. If you don't want to plead guilty, we'll go to trial. We have got plenty of time to try them. That will give each of you until noon today to file any plea agreements. After that you will plead straight up or you go to trial.

*Corbitt,* 996 F.2d at 1133 (quoting Tr. p. 5). Shortly thereafter, the court continued:

They want to go out and get arrested, they come in here and they get a fair trial, and if they get found guilty, they'll also get a fair sentence, fairly high.

*Id.* at 1134 (quoting Tr. p. 6).

In *United States v. Bruce,* cited *supra,* during discussion of a proposed plea agreement, the trial judge expressed his concern that if the case went to trial and the defendant was convicted, he might be required to impose a life sentence under the guidelines. This apparently was an accurate assessment of the guideline penalty absent any plea agreement. The judge, implicitly contrasting the potential life sentence versus the prospective 42 months under the plea agreement, urged the defendant to "think carefully about it" and that "[l]ife in prison is a long time." *Bruce,* 976 F.2d at 552. The judge concluded by addressing the defendant's parents, stating "[i]f it was my child, I would think carefully about it, if it comes down to that, I have to give it." *Id.*

■ "The primary concern of those who would dissociate the judge from the plea bargaining process has been that judicial intervention may coerce the defendant into an involuntary plea that he would not otherwise enter." *Corbitt,* 996 F.2d at 1134 (quoting

*United States v. Werker,* 535 F.2d 198, 201 (2nd Cir.), *cert. denied,* 429 U.S. 926, 97 S.Ct. 330, 50 L.Ed.2d 296 (1976)). Rule 11's prohibition on court participation in plea negotiations "is designed to totally eliminate judicial pressure from the plea bargaining process." *Id.* at 1135. Three rationales have been advanced for the strict prohibition on judicial participation: (1) "judicial involvement in plea negotiations inevitably carries with it the high and unacceptable risk of coercing a defendant to accept the proposed agreement and plead guilty"; (2) the prohibition "protects the integrity of the judicial process"; and (3) the ban preserves the judge's impartiality after the negotiations are completed. *Bruce,* 976 F.2d at 556–57.

The district court's statements in the instant case, while falling far short both as to degree and content in comparison with the improper statements in *Corbitt* and *Bruce,* nonetheless crossed the line into the realm of participation. We resist the inclination, however appealing, to become involved in evaluating the degree of judicial participation. Such inquiry is further not required in light of the fact that Casallas' change of heart from his initial rejection of a guilty plea to his subsequent decision to plead guilty occurred directly on the heels of the district court's participatory comments.

■ Although it is clear that the district court judge here was motivated primarily by the concern that appellant be thoroughly apprised of the situation that he faced, Rule 11(e) requires that this concern, however well-intentioned, be addressed by someone other than the judge before whom the defendant is to plead guilty and be sentenced. We therefore hold that Casallas must be allowed to withdraw his guilty plea to the Texas indictment.[9]

prior to October 1, 1981 were adopted as precedent.

**9.** We are not persuaded by the government's argument that Rule 20 alters the landscape before us, although we do find that the Rule 20 situation explains some of the trial court's comments. The government points to the fact that Casallas had executed a Rule 20 transfer prior to his appearance in Florida, in which he agreed to enter a plea to the Texas indictment in Florida. Once Casallas indicated an unwillingness to plead, Rule 20 required that he be returned to Texas for trial. Thus, the trial judge's initial

comments regarding sending Casallas back to Texas merely reflect the fact that he had accepted appellant's decision not to plead guilty and that, consequently, the defendant had to be returned to Texas. Additionally, the district court in the instant case had no stake in saving itself a trial because, had Casallas elected to proceed to trial, the trial would have been held in Texas.

The government argues that this situation, due to the Rule 20 circumstance, lacked the potential for coercion that is normally present when the same judge is conducting both the plea change hearing and the trial. The potential for coercion

We must now address whether the judge's participatory comments during the initial plea to the Texas indictment tainted Casallas' subsequent pleas before the judge on the Florida indictments. We conclude that these pleas were not tainted and therefore need not be set aside.

■ The second plea change hearing was held approximately one month after the initial plea. The transcript of that proceeding reveals no prohibited participation by the district court judge whatsoever. Additionally, the second plea change hearing is error free except for the court's failure to advise the defendant of the existence of the sentencing guidelines, which error is addressed below and determined to be harmless in this case. Thus, the comments made by the judge at the first plea change hearing are the only basis whatsoever for setting aside Casallas' pleas to the Florida indictments. For the reasons discussed below, we find that the trial judge's comments at the first plea hearing did not infect or taint the guilty pleas at the second plea hearing.

In making this finding, we once again revisit the nature of the district court judge's comments at the plea change hearing. In determining whether to set aside the initial plea due to participation by the district court judge, we refused to consider the nature of the court's participation. In doing so, we abided by the bright-line rule and its prophylactic nature. We re-open that inquiry now, however, to determine whether the participation in the first proceeding contaminated the second proceeding. Under the specific

circumstances of this case and in view of the limited and non-threatening nature of the district court's participation, we find it unnecessary to invalidate Casallas' pleas to the Florida indictments. The district court judge's comments were clearly intended to apprise the defendant of his situation and to contrast the options that he faced. The remarks were factual and intended to convey information that defendant should have received, and perhaps did receive, from counsel. More importantly, the remarks were non-threatening and could not have been objectively viewed as a threat by any reasonable defendant.[10]

On the basis of the foregoing, we affirm Casallas' pleas and sentences on both Florida indictments.

## III. FAILURE TO INFORM DEFENDANT OF THE SENTENCING GUIDELINES

Appellant argues that the district judge's failure to advise him of the existence of the sentencing guidelines during both the first and second plea change hearings was error that mandates reversal of his convictions. Both Casallas and the government agree that the district court's failure to so advise technically violated Rule 11(c)(1)'s requirement that the court inform the defendant of "the fact that the court is required to consider any applicable sentencing guidelines but may depart from those guidelines under some circumstances." The government, however, argues that this technical violation was harm-

---

is the greatest when a defendant realizes that the judge who is expressing an opinion, implicitly or explicitly, that he should plead, is the same person who will preside at his trial, and, if convicted, his sentencing. Undercutting this perspective, however, is the fact that Casallas was facing two upcoming trials before the same judge, a fact that was pointed out during the plea change hearing. Moreover, the first of these trials was scheduled to begin approximately a month from the date of the initial plea, with the second trial scheduled to begin approximately two months later. Thus, the potential for coercion in the circumstances of this case was not in fact significantly lessened by the Rule 20 circumstance.

**10.** Moreover, a possible motivation for Casallas' guilty pleas to the Florida indictments is revealed by the transcript of the second plea change hear-

ing, which clearly shows that Casallas was concerned about the possibility of consecutive sentences for the two conspiracies charged in the Florida indictments. By pleading guilty to both indictments and having the guilty pleas consolidated into one sentencing hearing, Casallas obtained the possibility of concurrent sentences, which he eventually received. If he had chosen to go to trial and been found guilty on both indictments, Casallas risked the possibility of consecutive sentences. Given the amount of cocaine involved in the two cases, 350 kilograms of cocaine and 150 kilograms of cocaine, respectively, the opportunity for concurrent sentences provided Casallas with a very strong incentive to enter guilty pleas to the Florida indictments. Furthermore, this incentive existed regardless of the Texas indictment.

less within the meaning of Rule 11(h). We agree.

■ Conceding that he was, in fact, aware of the existence of the guidelines, appellant nonetheless urges that the court's error mandates reversal. The law is clear that the district court was not required to ascertain and communicate to appellant an estimate of the guideline range. *See* Commentary to Rule 11(c)(1) (indicating that a defendant is not entitled to know his guideline range prior to pleading guilty). Further, Rule 11(c)(1)'s commentary indicates that the purpose of this portion of Rule 11 is to "assure[ ] that the existence of guidelines will be known to a defendant before a plea of guilty." Strict compliance with Rule 11(c)(1) in this case would have required the district court to advise appellant of a fact of which he was already aware, to-wit, that the sentencing guidelines existed.

■ Rule 11(h) states that "[a]ny variance from the procedures required by this rule which does not affect substantial rights shall be disregarded." The Eleventh Circuit has previously noted that "the circumstances for excusing noncompliance with the Rule because of harmless error are fairly limited." *United States v. Zickert*, 955 F.2d 665, 668 (11th Cir.1992).[11] This case presents one of those limited situations. Under the specific circumstances of this case, where the defendant was advised of the controlling statutory sentence, where the defendant was thereafter sentenced within that range, and where the defendant in fact knew that the sentencing guidelines existed and would be used to establish a sentencing range, we hold that the trial court's failure to mention the sentencing guidelines during the plea did not affect appellant's substantial rights. Accordingly, the trial court's failure in this regard, while falling short of Rule 11's requirements, is harmless error.

### IV.

We vacate Casallas' conviction and sentence solely on the Texas indictment on the basis of our holding above. Pursuant to Fed.R.Crim.P. 20, that case, upon remand, will be transferred back to the Southern District of Texas from where it originated.

Accordingly, the decisions of the trial court with respect to the two Florida indictments are AFFIRMED. Its decision with respect to the Texas indictment is REVERSED and REMANDED with instructions.

---

11. We reject appellant's argument, based on *Zickert*, that the district judge erred in failing to advise him that he had no right to withdraw his plea of guilty. The defendant in *Zickert* was allowed to withdraw his guilty plea after the court failed to advise the defendant that he had no right to withdraw his plea of guilty if the court refused to impose the sentence recommended by the government. The critical fact present in *Zickert* is absent here. In *Zickert*, a written plea agreement specifically stated that the defendant would have an opportunity to withdraw his guilty plea in the event that the court rejected provisions of the agreement.

Thus, the Court in *Zickert* determined that this provision could have misled the defendant into thinking that he could withdraw his plea later if the court refused to accept the government's sentencing recommendations. *Zickert*, 955 F.2d at 669.

The district judge involved in this case does not accept written plea agreements. Although mention is made in the briefs that Casallas signed a written plea agreement in the Texas case as part of the Rule 20 transfer, appellant has not presented any written plea agreements for our review. Consequently, *Zickert* is of no precedential value to appellant.