[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 08-12674
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 22, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 06-00043-CR-T-17-TGW

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MICHAEL L. CONE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(April 22, 2009)

Before TJOFLAT, DUBINA and FAY, Circuit Judges.

PER CURIAM:

Michael L. Cone appeals his convictions for conspiracy to violate federal bankruptcy laws and two counts of bankruptcy fraud, in violation of 18 U.S.C. §§ 371 and 157.  On appeal, he argues that the district court violated Fed.R.Crim.P. 11(c)(1)'s prohibition on judicial participation in plea negotiations.  For the reasons set forth below, we affirm.

**I.**

A federal grand jury returned a superseding indictment against Cone and two codefendants, charging him with: conspiracy to violate federal bankruptcy laws, in violation of 18 U.S.C. §§ 371, 152, and 157 (Count One); wire fraud affecting a financial institution, in violation of 18 U.S.C. § 1343 (Count Two); making false statements, in violation of 18 U.S.C. § 1001 (Count Three); and two counts of bankruptcy fraud, in violation of 18 U.S.C. § 157 (Counts Five and Six).

Cone and the government entered into a written plea agreement, whereby Cone agreed to plead guilty to Counts One and Two in the indictment, and the government agreed to dismiss the remaining counts.  The plea agreement advised Cone that the statutory maximum sentence for Count 1 was 5 years' imprisonment, and the statutory maximum sentence for Count 2 was 30 years' imprisonment.

A magistrate judge conducted a standard plea colloquy with Cone in which the magistrate, <u>inter alia</u>, reviewed the terms of the plea agreement, explained the

2

applicable statutory maximum penalties, and ensured that Cone was pleading guilty voluntarily. At one point in the hearing, the magistrate indicated that he would not accept Cone's guilty plea on Count One because, in attempting to ensure that there was a sufficient factual basis for the plea, Cone denied having knowledge that his actions were illegal. Cone then reassured the magistrate that he wished to plead guilty and Cone admitted to having knowledge of his illegal activity. Cone ultimately pled guilty to both Counts One and Two, and the district court subsequently accepted his plea.

Three months later, Cone, through a new attorney, filed an "agreed motion" to substitute his guilty plea on Count Two for the entry of a guilty plea on Counts Five and Six. Defense counsel explained that he was not satisfied that there was a sufficient factual basis establishing the "affecting a financial institution" element in Count Two or that Cone was aware of this element at the time he entered his guilty plea. Although the government disagreed on that point, counsel explained that the government had nonetheless agreed to resolve the issue by having Cone "enter guilty pleas to Counts Five and Six . . . in return for the Government's agreement to dismiss Count Two." Cone simultaneously filed a "motion to modify or withdraw" his guilty plea to Count Two. However, defense counsel subsequently clarified that this was not an independent motion, but was rather intended as an

exhibit "so that the Court could see what the basis was for the agreement."

The court held a status hearing, at which time the parties confirmed the terms of the proposed plea agreement. The government also noted that "under the new plea agreement that's proposed by the parties, [Cone's] base offense level would start off as six instead of seven."[1] Cone informed the court that he had discussed the proposed agreement with his attorney and wished to proceed under that agreement.

The government then filed an Addendum to the original plea agreement, describing the terms of the proposed agreement and clarifying that the Addendum did not otherwise affect the terms of the original plea agreement. In addition to setting out the elements of the offense in Counts Five and Six and the statutory maximum penalties, the government described the factual basis supporting those two counts.

The district court held a plea hearing and first recognized that Cone's attorney had filed a motion to withdraw. Counsel recognized that his motion was "vague," but thought it would become clear as the hearing proceeded. The district

---

[1] Cone's base offense level would have been 7 in connection with Count 2 because the statutory maximum penalty for that offense was in excess of 20 years' imprisonment. U.S.S.G. § 2B1.1(a)(1); see 18 U.S.C. § 1343 (providing for a statutory maximum penalty of 30 years' imprisonment). However, Cone's base offense level would have been 6 in connection with Counts 5 and 6 because the statutory maximum penalty was less than 20 years' imprisonment. U.S.S.G. § 2B1.1(a)(2); see 18 U.S.C. § 157 (providing for a statutory maximum penalty of 5 years' imprisonment).

4

court began by twice asking Cone whether he in fact wished to plead guilty to Counts Five and Six in exchange for withdrawing his guilty plea to Count Two, and Cone responded affirmatively. Cone then explained that the "process ha[d] bogged down a little bit" because some of the facts in the government's Addendum were not accurate, and Cone wanted to make sure that they were correct. The court responded:

> Well, now, just understand, I don't really care. If it got down to nuts and bolts, I'm not sure I'd let you withdraw your plea to Count Two. The only reason I'm doing it is because both sides have agreed to it.
>
> It was a late motion to withdraw the plea. I'm not sure that I would allow the plea to be withdrawn if it wasn't agreed to. So don't mess with me this morning. Do you understand?
>
> You – you – you proceeded in this manner throughout this entire litigation. You did this in front of [the magistrate], there was a problem, and I've read the transcript so, you know, this is – this is the – this is the time.
>
> If we're going to do this, we do it this morning. If not, then there – I'm going to – no withdrawing of the plea, is that clear?

The government explained that it had met with defense counsel the previous day regarding "Cone's apprehensions on some of the facts" and, based on that discussion, it was unclear to the government whether Cone would admit to facts sufficient to support a guilty plea. The court decided that it would "go through the plea colloquy as to Five and Six. If that is sufficient, then I will take up the motion

5

to withdraw the plea to Count Two. If it's not successful, then we're back to where we were." At that point, Cone asked for a five-minute recess, and the court responded:

> Okay. I have a trial at – I have a trial at 9:30, okay? So I had allotted an hour for this. And I will give you [approximately 15 minutes]. And then you come back in, and if you feel you can't proceed with this, then that's fine, I'll proceed with the sentencing on Counts One and Two on the date in question.

When the hearing reconvened, the court asked Cone how he wished to proceed, as it did not "want to take a lot of time going through a plea colloquy if in the end you have no intentions of admitting to the necessary facts to support the plea." Cone responded:

> Your Honor, what I'd like to do is accept responsibility for, uh, Counts No. Five and Counts No. Six. And I'd like to, uh, agree to the overt acts that were included with in the, uh – within the Indictment, specifically as it relates to Counts No. Five and Six. And I'd like to accept responsibility and – and ask that the plea be changed from Count Two to Counts No. Five and No. Six.

The court then asked Cone to explain his concerns about the factual basis for Counts Five and Six, and Cone responded by disputing several of the facts in the government's Addendum. The court then stated: "Okay. Well, I'm not going to proceed with the – the plea to Counts Five and Six. And we'll just stay where we are. You pled guilty to Counts One and Two . . . [and] the sentencing is set for March." The following colloquy ensued:

6

CONE:     [T]here are some overt acts that relate to Five and Six that – that I don't have issues with.  And it's just that . . . I didn't want to . . . execute this if it doesn't appear that . . . is factually correct.  I didn't want to . . . get myself in some sort of trouble.

COURT:    Okay.

          Well, I will tell you that I've set this off for a number of days, first, so that we wouldn't be in this position when we got here this morning and the issues could be worked out.

          . . .

          I'll rule on the motion [filed by counsel] that I have which I have not ruled on.  I'm not going to proceed with the plea.  It doesn't seem to me that you are accepting responsibility to the facts in the . . . factual basis of the . . . amendment to the plea agreement.

CONE:     Your Honor –

COURT:    You know, I – that's fine.  I don't really care.

CONE:     Your Honor, may I – I want to accept responsibility. There's issues in the overt acts that I – I completely claim responsibility for.  May I ask that I have 24 hours to submit my overt acts?

COURT:    No, I'm not doing that.

The court then discussed defense counsel's motion to withdraw, the basis of which had become clear, and defense counsel acknowledged that he had received the government's Addendum several weeks earlier.  When asked to respond to

7

counsel's motion to withdraw, Cone complimented his attorney and then stated:

> And, you know, I'd certainly like to – and I think what [counsel's] position is is that we made a commitment to go to Five and Six instead of Two. And I'd like to see us fulfill that commitment. But at the same time I don't want to put my name on something that I know is – by a word or two is off changes the meaning.

After the court suggested continuing the hearing until the following morning, the government responded that Cone was not disputing one or two words in the government's factual proffer, but was rather making "flat out bold assertions" which were "completely contrary to the evidence we have, and I would see no need to try to reset this because candidly we wouldn't accept any plea [where] he would be failing to acknowledge, uh, the truth of it. . . . So I just don't think he's capable of admitting and accepting his guilt." Though the court expressed "great trepidation . . . as to whether it [would] do any good," it reset the hearing for the following morning at Cone's request.

At the plea hearing the following morning, Cone reiterated his desire to plead guilty to Counts Five and Six and withdraw his guilty plea to Count Two in return. The court reminded Cone that the prior plea hearing had broken down because of his inability to admit some of the facts in the Addendum, and Cone informed the court that, after speaking to his attorney, that no longer posed a problem. The court then conducted a full, standard plea colloquy with Cone, at the

8

end of which Cone pled guilty to Counts Five and Six.  The government then set out the factual basis for Counts Five and Six, and the court asked whether Cone had any objections, at which point Cone again disputed many of the details included in the government's factual proffer.  However, after several back-and-forth discussions with the court, Cone ultimately acknowledged acting with illegal intent with respect to certain incidents.  At that point, the court stated:

> All right.
>
> Mr. Cone, I'm going to accept the plea.  I'll accept the plea to both Count Five and Count Six.  You know, I – I think that you have continually attempted throughout the plea process to undermine your responsibility here, and all along I think it's been somewhat difficult for you to accept responsibility.
>
> But you have accepted, I think, sufficient facts to substantiate a factual basis for a plea to Counts Five and Six.  So I will – I will accept the plea.  I find that you are competent to enter the plea, and find there is a factual basis for the pleas.

The court subsequently sentenced Cone to 60 months' imprisonment on Counts 1, 5, and 6, to run consecutively, and it dismissed Counts 2 and 3.  This appeal followed.

## II.

Rule 11(c)(1) provides in pertinent part: "An attorney for the government and the defendant's attorney, or the defendant when proceeding pro se, may discuss and reach a plea agreement.  <u>The court must not participate in these</u>

discussions." Fed.R.Crim.P. 11(c)(1) (emphasis added). "The primary purpose of [this rule] is to avoid the danger of an involuntary guilty plea coerced by judicial intervention." United States v. Diaz, 138 F.3d 1359, 1363 (11th Cir. 1998). "We have interpreted [this rule] as a bright line rule prohibiting the participation of the judge in plea negotiations under any circumstances; it is a rule that . . . admits of no exceptions." United States v. Johnson, 89 F.3d 778, 783 (11th Cir. 1996) (quotations and alteration omitted).

Cone did not object on this ground below, and thus, we review this issue for plain error. See United States v. Monroe, 353 F.3d 1346, 1349 (11th Cir. 2003) ("When a defendant . . . fails to object to a Rule 11 violation in the district court, this Court reviews under the plain-error analysis."). Instead of conducting the normal four-prong plain-error analysis, however, we have stated that "[j]udicial participation [in plea negotiations] is plain error, and the defendant need not show actual prejudice." United States v. Corbitt, 996 F.2d 1132, 1135 (11th Cir. 1993).

**III.**

On appeal, Cone argues that the district court, at the first plea hearing, "intimidated him into pleading guilty by threatening to deny his motion to withdraw his guilty plea to Count Two unless he pled guilty to Counts Five and Six." The premise of Cone's argument is disingenuous because he did not file an

10

independent motion to withdraw his guilty plea on Count Two. Instead, Cone entered into an agreement with the government whereby he would plead guilty to Counts Five and Six and, in exchange, the government would allow him to withdraw his guilty plea on Count Two. This proposed plea agreement was the only basis upon which Cone sought to withdraw his guilty plea on Count Two. Thus, the only reason why the court indicated at the initial plea hearing that it would not allow Cone to withdraw his guilty plea on Count Two was because it anticipated – correctly – that Cone would contest the government's factual proffer supporting Counts Five and Six. In other words, the court simply recognized that if it declined to accept Cone's attempt to plead guilty to Counts Five and Six, then there would be no basis to allow him to withdraw his guilty plea on Count Two.

Furthermore, nothing in the record otherwise supports Cone's assertion that the court impermissibly participated in plea negotiations. First, it is doubtful that Cone may invoke Rule 11(c)(1) because he and the government had already executed the proposed plea agreement. See United States v. Telemaque, 244 F.3d 1247, 1249 (11th Cir. 2001) ("[T]he written plea agreement was already executed. No case that Telemaque cites, or that we have located, holds that a court's post-agreement remark can violate the Rule."); Diaz, 138 F.3d at 1363 ("The district court's role under Rule 11 is to evaluate a plea agreement once it has been

11

reached by the parties and disclosed in open court. Prior to that time, a court should not offer comments touching upon proposed or possible plea agreements . . . .") (citation omitted).

This fact further highlights that the district court in this case did nothing more than fulfill its obligation under Rule 11 to ensure that there was a sufficient factual basis to support Cone's proposed guilty plea on Counts Five and Six. See Fed.R.Crim.P. 11(b)(3) ("Before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea."); Johnson, 89 F.3d at 783 (stating that the court did not impermissibly participate in plea negotiations where it "went to some lengths" to ensure, inter alia, that there was a factual basis for the plea).

Furthermore, this case is distinguishable from our other cases in this area, as Cone was not confronted with the weighty decision of whether to proceed to trial. See, e.g., United States v. Casallas, 59 F.3d 1173, 1177-78 (11th Cir. 1995) (holding that there was a violation of the prohibition on judicial participation in plea negotiations where the court contrasted the 15-year sentence that the defendant would face if he went to trial with the 10-year he would face if he pled guilty); Corbitt, 996 F.2d at 1133-35 (same, where the court told the defendants that if they went to trial and were convicted, they would receive a "fairly high"

12

sentence).  Instead, Cone was merely attempting to substitute his guilty plea on Count Two for a guilty plea on Counts Five and Six.

In addition, this proposed substitution was, by all accounts, a favorable one for Cone, as it reduced the statutory maximum penalty from 30 to 5 years' imprisonment and provided a 1-level reduction in his base offense level.  Cone presumably recognized this benefit, as he repeatedly expressed a persistent and unequivocal desire – at the status hearing and throughout both the first and second plea hearings – to plead guilty to Counts Five and Six; there is simply nothing in the record to support Cone's assertion that he ever "wavered" in this regard.[2]

While the fact that the proposed plea agreement was favorable to Cone could have led the district court, as in Casallas and Corbitt, to encourage Cone to plead guilty to Counts Five and Six, the court, contrary to Cone's assertion, made no mention of this benefit at either of the plea hearings.  See Johnson, 89 F.3d at 783 ("The statements made by the district court here did not touch on the sentence Johnson might receive . . . .").  To the contrary, rather than encouraging Cone to plead guilty to Counts Five and Six, the court did precisely the opposite, resolutely refusing to accept Cone's plea until he sufficiently accepted the government's

---

[2]  Cone's refusal to accept the government's factual proffer for Counts Five and Six is not inconsistent with his unequivocal desire to plead guilty; rather, Cone made clear that he felt compelled to dispute the government's factual proffer because he did not want to put his name on something that was inaccurate and risk getting himself into trouble.

factual proffer.  Under these circumstances, it is difficult to see how the district court could fairly be accused of coercing Cone to plead guilty to Counts Five and Six.  Accordingly, we affirm Cone's convictions.

**AFFIRMED.**