[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-12927
Non-Argument Calendar

_____

D.C. Docket No. 9:11-cr-80187-KLR-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ARMANDO ANTONIO CASTRO,
a.k.a. Antonio,
a.k.a. Tony,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 10, 2013)

Before PRYOR, MARTIN and FAY, Circuit Judges.

PER CURIAM:

This appeal presents the issue whether the district court participated in plea discussions, in violation of Federal Rule of Criminal Procedure 11(c)(1), by advising a defendant about the penal consequences of rejecting his written plea agreement after he announced that he did not want to plead guilty. Armando Antonio Castro entered a written agreement with the United States to plead guilty to several counts of his indictment, but Castro renounced the agreement on the morning of his change of plea hearing. After the district court advised Castro that, "if you don't plead today[,] [the government] may charge you with other things that will make your sentence even more severe," Castro entered pleas of guilty in accordance with his plea agreement. Because the district court participated in plea discussions when it told Castro that he could receive a longer sentence if he rejected his plea agreement, see United States v. Casallas, 59 F.3d 1173, 1176–79 (11th Cir. 1995), we vacate Castro's convictions and remand with instructions to allow Castro to withdraw his guilty plea and reassign his case to a different judge for further proceedings.

## I. BACKGROUND

A grand jury returned a 14-count indictment that charged Castro for five counts of possessing with intent to distribute marijuana, 21 U.S.C. § 841(a)(1), (b)(1)(D), one count of possessing with intent to distribute marijuana and cocaine, id. § 841(a)(1), (b)(1)(C), (b)(1)(D), two counts of carrying a firearm during and in

2

relation to a drug trafficking offense, 18 U.S.C. § 924(c)(1), four counts of possessing a firearm in violation of a court order, id. §§ 922(g)(8), 924(a)(2), one count of possessing a firearm with an obliterated serial number, id. §§ 922(k), 924(a)(1), and one count of dealing in firearms without a license, id. §§ 922(a)(1)(A), 924(a)(1)(D).  A magistrate judge appointed a federal public defender to represent Castro at his initial appearance, but Castro later retained a private attorney.  At his arraignment hearing, Castro entered a plea of not guilty to each charge in his indictment.

Castro later negotiated a written plea agreement with the United States and signed the agreement a few minutes before his change of plea hearing.  During the plea colloquy, Castro told the district court that he was under the influence of medicine and it affected his ability to reason or think.  Defense counsel stated that Castro's response was the "first time that [he had] heard from Mr. Castro today that he was having an issue with the medication as to his ability to understand what was going on with the proceedings," and defense counsel requested additional time to confer with Castro.  After defense counsel spoke with Castro and "still [had] some reservations as to his ability to comprehend everything," the district court continued Castro's change of plea hearing for two weeks.

Three days before his change of plea hearing resumed, Castro again signed a plea agreement with the United States.  Castro agreed to plead guilty to seven

3

charges: two counts of possessing marijuana with intent to distribute, 21 U.S.C. § 841(a)(1), (b)(1)(D), one count of possessing with intent to distribute marijuana and cocaine, id. § 841(a)(1), (b)(1)(C), (b)(1)(D), one count of carrying a firearm during and in relation to a drug trafficking offense, 18 U.S.C. § 924(c)(1), two counts of possessing a firearm in violation of a court order, id. §§ 922(g)(8), 924(a)(2), and one count of dealing in firearms without a license, id. §§ 922(a)(1)(A), 924(a)(1)(D).  In exchange, the United States agreed to dismiss the seven remaining charges and to recommend that Castro receive reductions to his sentence that corresponded with his acceptance of responsibility and his level of cooperation.

On the morning of his change of plea hearing, Castro notified defense counsel that he did not want to plead guilty.  At the hearing, defense counsel told the district court that Castro did not want to change his plea, he was dissatisfied with counsel, and he wanted a new attorney appointed from the public defender's office.  The district court questioned Castro, who confirmed that he had changed his mind about pleading guilty:

> THE COURT:  Is this your wish, you did not want to go forward with the plea?
>
> THE DEFENDANT:  That's right.
>
> THE COURT:  Is it still your wish that you don't want Mr. Castillo to represent you?

4

THE DEFENDANT:  I can't pay him anymore, no.

THE COURT:  This means that you don't want him to represent you?

THE DEFENDANT:  I don't want him to represent me.

. . .

THE COURT: I guess I could appoint the public defender.

At the request of defense counsel, the district court advised Castro of the consequences of reneging on his plea agreement.  Castro responded to the advice by deciding to plead guilty:

> MR. CASTILLO (Defense counsel):  I just need Mr. Castro [to] understand that if he doesn't resolve the matter today that the government [intends] to withdraw whatever plea offer has been conveyed.
>
> THE COURT: Do you understand that the government has made you a plea offer in which they have made certain concessions, that if you don't plead today they may charge you with other things that will make your sentence even more severe?  Do you understand that?
>
> THE DEFENDANT:  Yes.
>
> THE COURT:   And you still want to go ahead with a public defender?
>
> THE DEFENDANT:  No.
>
> THE COURT:  Who do you want to represent you?
>
> THE DEFENDANT:  I'll just finish with Mr. Castillo then.
>
> THE COURT:  Do you want to plead today then?
>
> THE DEFENDANT:  Yes.

5

At the direction of the district court, Castro signed another copy of the plea agreement. Following a plea colloquy, the district court accepted Castro's seven pleas of guilty. Later, the district court sentenced Castro to 156 months of imprisonment.

Eight days after he was sentenced, Castro moved pro se to withdraw his pleas of guilty. Castro alleged that he had "expressed his displeasure with his private counsel . . . and his sentence" and, "after sentencing, [his] private counsel vacated himself from Castro" without filing a motion to withdraw the guilty pleas. The district court denied Castro's motion after "having reviewed the pertinent portions of the record and being duly advised in the premises."

On appeal, Castro argues for the first time that the district court participated in plea discussions in violation of Rule 11(c)(1). The United States responds that plea discussions terminated when Castro entered a plea agreement and the post-agreement statement of the district court apprising Castro of the consequences of vitiating his plea agreement did not violate Rule 11(c)(1).

## II. STANDARDS OF REVIEW

When a defendant fails to object to an alleged violation of Rule 11(c)(1), we review the alleged violation for plain error. See United States v. Corbitt, 996 F.2d 1132, 1134–35 (11th Cir. 1993). Plain error exists when the district court commits an error that is plain, affects the defendant's substantial rights, and "seriously

affect[s] the fairness, integrity or public reputation of judicial proceedings."

United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005) (internal quotation

marks and alterations omitted).  "Judicial participation is plain error."  Corbitt, 996

F.2d at 1135.

### III. DISCUSSION

Rule 11(c)(1) provides that counsel for the United States and the defendant,

either through counsel or acting pro se, "may discuss and reach a plea agreement,"

but "[t]he court must not participate in these discussions."  Fed. R. Crim. P.

11(c)(1).  Rule 11(c)(1) is the successor provision to Rule 11(e)(1), which similarly

prohibited the participation of the sentencing court in any plea discussions.  See

Fed. R. Crim. P. 11 advisory committee's note (1974 Amendments).  Both Rule

11(c)(1) and its predecessor were "designed to totally eliminate judicial pressure

from the plea bargaining process."  Casallas, 59 F.3d at 1178 (quoting Corbitt, 996

F.2d at 1135); see also Fed. R. Crim. P. 11 advisory committee's note (1974

Amendments).  And important reasons warrant separating the sentencing court

from the plea discussions: (1) judicial participation in the plea process may coerce

the defendant into accepting a proposed agreement or entering a plea of guilty

involuntarily; (2) judicial participation may affect the court's impartiality; and (3)

judicial participation affects the appearance of impartiality.  See Casallas, 59 F.3d

at 1178.  Because of these concerns, any "discussion [between the defendant and

7

the sentencing court] of the penal consequences of a guilty plea as compared to going to trial is inherently coercive, no matter how well-intentioned." United States v. Johnson, 89 F.3d 778, 783 (11th Cir. 1996).

Rule 11 contains an "unambiguous mandate" prohibiting any participation by the sentencing court in plea discussions "under any circumstances . . . [without] exception[]." Corbitt, 996 F.2d at 1135 (quoting United States v. Bruce, 976 F.2d 552, 558 (9th Cir. 1992)).  Our application of that mandate was easy in Corbitt because the district court commented on the penal consequences of proceeding to trial before the defendant had decided whether to plead guilty.  Id. at 1133–34.  We held that the district court violated former Rule 11(e)(1) when, in response to a request for additional time to negotiate at the commencement of a "status conference and change of plea hearing," the district court stated that it would not "play games," the defendants had a couple of hours "to file any plea agreements," and, if they opted not to change their pleas, they would "get a fair trial, and if . . . found guilty, they[] [would] also get a fair sentence, fairly high."  Id. at 1133–35. We concluded that the district court had violated Rule 11 based on the timing of those remarks, not their coercive character.  Rule 11, we explained, barred the sentencing court from "tak[ing] [any] part whatever in any discussion or communication regarding the sentence to be imposed prior to the entry of a plea of guilty or conviction, or submission to [it] of a plea agreement."  Id. at 1134

8

(quoting United States v. Werker, 535 F.2d 198, 201 (2d Cir. 1976)); see also

United States v. Diaz, 138 F.3d 1359, 1362–63 (11th Cir. 1998) (holding that the

district court violated Rule 11 because it "took an active part in discussing Diaz's

probable sentence before the time of his conviction").

Due to the potential for a sentencing court to influence the terms of a

proposed plea agreement, a sentencing court cannot discuss with the defendant the

consequences of pleading guilty and going to trial until he enters a plea of guilty or

requests approval of his plea agreement.  Casallas, 59 F.3d at 1177–78.  In

Casallas, for example, we held that the district court violated former Rule 11(e)(1)

when, in response to the defendant's announcement at his change of plea hearing

that he had decided to renounce his plea agreement, the district court told Casallas

that he would not "get the benefit of any bargains or promises" and he faced a

"minimum mandatory [of] fifteen years" as compared to the "minimum mandatory

of ten" that he would receive "[i]f he plead[ed] this afternoon."  Id. at 1176.

Although those statements were "innocuous and intended only to insure that [the

defendant] was making an informed decision," id. at 1177, we "resist[ed] the

inclination . . . to become involved in evaluating the degree of judicial

participation," id. at 1178.  Because Rule 11 created a "bright-line rule," id. at

1179, and the intervention of the district court preceded Casallas's "decision to

plead," id. at 1177, the district court had "crossed the line into the realm of participation," id. at 1178.

This appeal is indistinguishable from Casallas. The district court violated the "bright-line rule," id. at 1177, against judicial participation in plea discussions by telling Castro that he likely faced a "sentence even more severe" if he rejected that agreement. See Corbitt, 996 F.2d at 1134. Although the district court was "motivated . . . by the concern that [Castro] be thoroughly apprised of the situation that he faced, . . . this concern, however well-intentioned," cannot excuse the judicial participation. Casallas, 59 F.3d at 1178. "Judicial participation is plain error, and [Castro] need not show actual prejudice" to invalidate his guilty plea. Corbitt, 996 F.2d at 1135.

The United States argues that the district court did not participate in plea discussions because "Castro had already negotiated and executed his plea agreement with the United States," but we explained in Casallas that the "bright-line rule and its prophylactic nature" do not terminate when the parties reach an agreement out of court. 59 F.3d at 1178–79. Until a "plea agreement . . . [is] reached by the parties and disclosed in open court," the sentencing court cannot "offer comments touching upon proposed or possible plea agreements" because those comments could coerce the defendant into entering an involuntary plea. Diaz, 138 F.3d at 1363; see Casallas, 59 F.3d at 1178; Corbitt, 996 F.2d at 1134.

10

Although we stated in United States v. Telemaque, 244 F.3d 1247 (11th Cir. 2001), that "[n]o case . . . cite[d] [by the defendant], or that we [had] located, holds that a court's post-agreement remark can violate [Rule 11]," that statement is not controlling for two reasons. Id. at 1249. First, that statement is incorrect. We held in Casallas that the sentencing court violated Rule 11 after the defendant had negotiated a plea agreement. 59 F.3d at 1176 & n.6. "Under our prior precedent rule, a panel cannot overrule a prior one's holding even though convinced it is wrong." United States v. Chubbuck, 252 F.3d 1300, 1305 n.7 (11th Cir. 2001). Second, the statement in Telemaque is dicta because it was not "necessary to deciding the case then before us." See United States v. Eggersdorf, 126 F.3d 1318, 1322 n.4 (11th Cir. 1997). In Telemaque, we vacated the defendant's conviction because "the district court plainly erred in failing to describe to [the defendant] at all the nature of the charges against him." 244 F.3d at 1250.

The United States also argues that we must affirm Castro's pleas under Johnson, but we disagree. The district court in Johnson did not violate the "literal terms" of former Rule 11(e)(1) because "[n]o discussions concerning the terms of the plea or the sentence that would be imposed occurred during the colloquy by the court, other than the advice Rule 11(c) require[d] the court to give [the] defendant." 89 F.3d at 782. And the district court also did not violate the "broader purpose" of the rule because it did not broach the subject of punishment and its

11

statements were not otherwise coercive.  Id. at 782–83.  The district court identified the "obvious risk" Johnson faced by pleading guilty to a substantive offense and proceeding to trial on a related conspiracy charge to ensure that his guilty plea was knowing and voluntary, all the while reminding Johnson "that he was free to make the choice."  Id. at 783–84.

In contrast with Johnson, the district court participated in plea discussions between Castro and the United States in violation of Rule 11(c)(1).  The district court erred when it "contrast[ed] the consequences [Castro] faced [for rejecting his plea agreement] with the consequences he faced if he pled," see Johnson, 89 F.3d at 783, and Castro "need not show actual prejudice" to obtain relief, see Corbitt, 996 F.2d at 1135.  We must reverse and remand with instructions to allow Castro to withdraw his pleas of guilty.  On remand, Castro's case must "be reassigned to another judge . . . as a means to extend the prophylactic scheme established by Rule 11 and to prevent the possible misimpression created by the judge's participation."  See id.

## IV. CONCLUSION

We **VACATE** Castro's convictions, and we **REMAND** with instructions to allow Castro to withdraw his plea of guilty and to reassign the case to a different judge for further proceedings.

12